UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER GALE CAMPBELL,

    Plaintiff,

v.                                                                                    Case No. 1:19-cv-699
                                                                                     Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff filed an application for disability benefits on April 5, 2016, alleging a disability onset date of February 27, 2012. PageID.36. Plaintiff identified his disabling condition as back problems, a heart attack, and a stent in the heart. PageID.236. Prior to applying for DIB and SSI, plaintiff completed the 12th grade, attended janitorial school, and had past employment as a production line welder, a bending machine operator, and a hand packer. PageID.48, 237. The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on August 10, 2018. PageID.36-50. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I.   LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 27, 2012, and that he met the insured status of the Social Security Act through December 31, 2017. PageID.38. At the second step, the ALJ found that plaintiff had severe impairments of: degenerative disc disease; right cubital and carpal tunnel syndrome, status-post release; left carpal tunnel syndrome; morbid obesity; myocardial infarction, status-post stent placements; coronary artery disease; congestive heart failure; paroxysmal atrial fibrillation; and borderline intellectual functioning. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.39.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following additional limitations: he can occasionally balance, kneel, crouch, crawl, and climb ramps/stairs. The claimant can never climb ladders, ropes, or scaffolds and must avoid all exposure to unprotected heights, moving machinery, wetness, and vibration. He can frequently finger and feel. In addition, the claimant's work is limited to simple, routine, repetitive tasks.

PageID.44. The ALJ also found that plaintiff could not perform any of his past relevant work. PageID.48.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.48-49. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled work in the national economy such as document preparer (150,000 jobs), printed circuit board assembler (53,000 jobs), and order clerk (176,000 jobs). PageID.49. Accordingly, the ALJ determined that

4

plaintiff has not been under a disability, as defined in the Social Security Act, from February 27, 2012 (the alleged onset date) through August 10, 2018 (the date of the decision). PageID.49-50.

### III. DISCUSSION

Plaintiff's counsel set out three errors.

**A. Did the ALJ's residual functional capacity (RFC) assessment fully consider the impact of plaintiff's severe mental and physical impairments and the side effects of his required medications?**

RFC is a medical assessment of what an individual can do in a work setting despite the functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). Plaintiff contends that the RFC is flawed because the ALJ did not consider all of his severe and non-severe impairments.

In addition to the severe impairments identified by the ALJ, plaintiff stated that his non-severe impairments (obesity, diabetes mellitus, tinnitus, gluteal abscess, basal cell carcinoma (nose), onychomycosis, and tobacco use disorder) affected his ability to work. Plaintiff's Brief (ECF No. 10, PageID.1713). However, the only two matters addressed by plaintiff are the side effects of his medications and the limitations posed by his obesity, *i.e.*, plaintiff weighs 400 pounds and has a body mass index (BMI) "that exceeds 40." *Id.* at PageID.1714.

**1.  Medication side effects**

Plaintiff contends that the side effects of his medications included drowsiness, dizziness, diarrhea and upset stomach. In evaluating the limiting effect of a claimant's symptoms, the ALJ should consider the side effects of any medication taken to alleviate symptoms. *See*

5

*Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). However, such claims must be supported by objective medical evidence. *See Essary v. Commissioner of Social Security*, 114 Fed. Appx. 662, 665-66 (6th Cir. 2004) (where claimant testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians); *Farhat v. Secretary of Health & Human Services*, No. 91-1925, 1992 WL 174540 at *3 (6th Cir. July 24, 1992) ("[claimant's] allegations of the medication's side-effects must be supported by objective medical evidence"). Here, plaintiff did not present any medical evidence to support his claim regarding medication side effects; rather, plaintiff simply cited his testimony at the administrative hearing. PageID.76, 1714. In the absence of any medical evidence, plaintiff has not demonstrated that the ALJ erred on this point. Accordingly, this claim of error is denied.

### 2.     Obesity

Plaintiff contends that the ALJ did not analyze how his obesity factored into his ability to function and work. While obesity is no longer a listed impairment, the Commissioner addresses the effects of obesity on a claimant's ability to perform work-related activities. In this regard, Social Security Ruling (SSR 02-1p) provides guidance, stating in pertinent part:

> [Even] though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).[1]

While SSR 02-1p provides guidance for the ALJs in evaluating a claimant's obesity, it does not create a separate procedure requiring the Commissioner to consider obesity in every case.

> Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411-12 (6th Cir. 2006).

Here, the ALJ considered the impact of plaintiff's obesity throughout the decision. As discussed, the ALJ found plaintiff's morbid obesity to be a severe impairment. In addition, the ALJ considered the effects of plaintiff's obesity at step three, stating in part:

> There is no listing for obesity (SSR 02-1p). Generally, obesity "meets" the requirements of a listing if there is another impairment that by itself meets the requirements of a listing, or an impairment that, in combination with obesity, meets the requirements of a listing. Alternatively, obesity alone may be medically equivalent to a listed impairment if, for example, the obesity is of such a level that it results in an inability to ambulate effectively. Finally, there may be multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments causes signs, symptoms, and laboratory findings that are of equal medical significance to one of the listings. In this case, the claimant's obesity, either alone or in combination with her other impairments, is not of listing level severity. Specifically, as evidence by physical examinations describing normal gait, he retains the ability to ambulate effectively and his other listed severe impairments, although worsened by obesity, are not of listing level severity.

PageID.41.

Finally, at step four, the considered plaintiff's obesity in limiting him to sedentary work, stating:

---

[1] The Court notes that SSR 19-2p (effective May 20, 2019) rescinds and replaces SSR 02-1p for new applications filed on or after its effective date. *See* SSR 19-2p fn. 14. Because plaintiff filed his application in 2016, SSR 02-1p applies to this review of the ALJ's decision.

> [T]he record revealed degenerative disc disease and carpal tunnel syndrome and physical examinations/treatment notes described symptoms such as decreased lumbar range of motion, lumbar tenderness, and back pain, which, in combination with the claimant's morbid obesity, supports limiting him to sedentary work with additional postural limitations.

PageID.46. Based on this record, the ALJ considered plaintiff's obesity in determining the RFC. Accordingly, plaintiff's claim of error is denied.

> **B. Did the ALJ legally err in failing to find that plaintiff's diabetes meets or equals\ the criteria of listing 9.5B and because of her error in fully evaluating plaintiff's symptoms at step 3 of the sequential evaluation process?**

"[S]tep three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). At step three, a claimant bears the burden of demonstrating that he meets or equals a listed impairment. *See Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§404.1525(d) and 416.925(d).

Here, plaintiff contends that the ALJ failed to properly evaluate his condition under Listing 9.5B. Defendant points out that diabetes is not a listed impairment. *See* SSR 14-2p (*Evaluating Diabetes Mellitus*) ("DM is not a listed impairment for adults. However, the effects of DM, either alone or in combination with another impairment(s), may meet or medically equal the criteria of a listing in an affected body system(s)."). *See also*, 20 C.F.R. Part 404, Subpt. P, App. 1 § 9.00.B.5 (*Diabetes mellitus and other pancreatic gland disorders*). Plaintiff's brief

8

incorrectly addresses diabetes as a listed impairment.  Plaintiff's Brief at PageID.1717-1719.  He does not demonstrate how diabetes meets the criteria of another listed impairment.  A claimant such as plaintiff "must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing."  *Smith-Johnson v. Commissioner of Social Security*, 579 Fed. Appx. 426, 432 (6th Cir. 2014).  "Rather, the claimant must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing."  *Id*.  Accordingly, this claim of error is denied.

### C.  Was the ALJ's credibility finding supported by the evidence of record?

Plaintiff's initial brief presented a series of perfunctory arguments critiquing the ALJ's decision: the ALJ disbelieved plaintiff's written statement and testimony that would exclude full time competitive employment; the ALJ based her credibility findings "on a few of the medical records that she cherry picked"; the ALJ maintained that plaintiff's pain allegations are not fully credible in light of the medical evidence; the ALJ is not a medical expert and her lay interpretation of the record cannot overcome the consistent expressions of plaintiff's doctors; the ALJ failed to consider the objective medical evidence and treating physician opinions as to severity when setting the RFC; and the ALJ discredited and largely ignored the opinion of a treating physician as to plaintiff's limitations for impermissible reasons.  Plaintiff's Brief at PageID.1719-1721.

In essence, it appears that plaintiff wants the Court to perform a de novo review of the record, evaluate nearly every aspect of the ALJ's decision, and then determine whether the decision is supported by substantial evidence.  As an initial matter, it is not sufficient for a party to mention possible arguments in a most skeletal way, "leaving the court to  . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Furthermore, this Court does

not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard*, 889 F.2d at 681.  Accordingly, these claims of error are denied.

Finally, in his reply brief, plaintiff contends that the ALJ made an obvious error in finding that "the claimant engaged in relatively normal daily activities."  PageID.48, 1774.  Daily activity is a relevant factor which the ALJ considers in evaluating a claimant's symptoms.  *Rogers*, 486 F.3d at 247.  Here, plaintiff refers to the ALJ's statements made at step three:

> While the claimant's impairments certainly cause some functioning difficulties, a review of the medical evidence failed to demonstrate extreme walking difficulties or extreme loss of upper extremity functioning.  In fact, physical examinations in the record, including evaluations conducted by consultative examiners, described normal gait, normal coordination, 5/5 extremity strength, intact grip strength, normal muscle tone, and intact motor function (3F/2, 4F/1-2, 4, 6, 6F/6, 8, 10, 12, 21, 13F/2, 15F/11, 119, 17F/7, 19F/2, 24F/14, 25F/8). The record also indicated that the claimant ambulated without an assistive device (4F/3, 6, 13F/2).  *Further, his impairments did not appear to interfere significantly with his daily activities, as evidenced by his ability to perform household chores, prepare meals, perform yard work, drive, shop, and handle finances (3E/3-4, 3F/2, 4F/3).  He also leaves the house without accompaniment and needs no reminders to tend to personal care activities/grooming (3E/3-4).*  Based upon this evidence, the undersigned finds that the claimant's impairments fail to meet or medically equal listing 1.02.

PageID.39-40 (emphasis added).

The ALJ also addressed plaintiff's daily activities at step four:

> In sum, while the claimant's impairments cause some functioning difficulties, the overall record failed to demonstrate debilitating symptoms. Physical and mental status examinations were generally unremarkable as a whole; diagnostic tests described mostly mild findings; the claimant exhibited improved symptoms with conservative treatment; and *the claimant engaged in relatively normal daily activities*.  Such evidence, in combination with medical opinions in evidence, supports the claimant's residual functional capacity and suggests that his impairments are less limiting than alleged.

PageID.48 (emphasis added).

Plaintiff contends that assessment of his daily activities is incorrect because the ALJ's finding relied primarily on plaintiff's written function report (Exh. 3E, PageID.249-262),

10

which taken together with plaintiff's testimony at the hearing (PageID.78), establish "that he performed no work at home except to grill maybe once per week and not much of anything else." PageID.1774. Plaintiff contends that had his true activity level been considered, "the ALJ should have reached an entirely different conclusion about plaintiff abilities to perform daily activities or work on a consistent basis." *Id*.

Plaintiff's contention is without merit. As an initial matter, plaintiff's function report reflects a person who is incapable of performing almost any activity. When asked to "[d]escribe what you do from the time you wake up until going to bed," plaintiff responded, "Basically I get up watch TV [sic]." PageID.250. However, this is not consistent with some of plaintiff's other responses within the function report, *e.g.*, that he takes care of his mother's dog when she is gone shopping. Plaintiff can take care of most of his personal care (*e.g.*, dressing, caring for his hair, shaving, feeding himself and using the toilet). *Id*. Plaintiff stated that his condition affects his ability to bathe "a lot" because he cannot stand for a long period of time. *Id*. Plaintiff prepares his meals weekly when he can cook on the grill. PageID.251. He does not perform indoor or outdoor chores due to his pain. *Id*. Plaintiff cannot drive because his medicine makes him drowsy, but he can ride in a car, and goes outside three or more times a day. PageID.252. He shops in stores for food and other personal needs and he can handle money (pay bills, count change, handle a savings account and use a checkbook). *Id*. Plaintiff does not engage in his hobbies of fishing and hunting, noting that he cannot walk with hunting supplies due to back pain. PageID.253. Plaintiff rides along to pick up his children at school, but he cannot visit family or friends like he would like to. PageID.253-254.

In reaching her determination, the ALJ relied on the psychological examination performed on August 28, 2015 (Exh. 3F, PageID.391-397), which reflects that plaintiff engaged

11

in more extensive daily activities. At that time, plaintiff indicated that he has friends his age and that he likes to hunt and fish (identifying these as both past *and present* interests). PageID.392. Plaintiff identified his activities as follows:

> The claimant wakes up most mornings "about almost noon." He reports that "I mostly just watch TV and cook on the grill["]. He indicates that he helps with the chores such as taking out the trash, vacuuming, dishes and cooking. The claimant denies any difficulty attending to his hygiene. The claimant reports that he can follow a recipe.

*Id*. Contrary to plaintiff statement in the function report that he cannot drive, plaintiff drove himself to the appointment. *Id*. In this regard, plaintiff's report to the psychologist that "he helps with the chores" contradicted plaintiff's statement in the function report that he could not perform any chores. *Id*. In addition, the examiner noted that plaintiff had no noticeable hygiene issues, no apparent motor difficulties, and no difficulties with his gait or posture. *Id*.

The ALJ also relied on matters contained in a consultative medical examination from September 2, 2015 (Exh. 4F, PageID.398-405). During the examination plaintiff stated: that he does not use an assistive device; that he lives with his mom; that he is able to drive; that he can do household chores and yard work; that he sits at home and watches TV; that he used to enjoy hunting and fishing; and, that he can walk a mile. PageID.400.

The record reflects that plaintiff made inconsistent and, at times contradictory, statements regarding the scope of his daily activities. It is the ALJ's function to resolve conflicts in the evidence. *See Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987). That is what the ALJ did in this case when she concluded that plaintiff engaged in relatively normal daily activities. Accordingly, ALJ did not err in evaluating plaintiff's daily activities.

## IV.     CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.


Dated:  November 3, 2020                                /s/ Ray Kent
                                                        RAY KENT
                                                        United States Magistrate Judge